# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

THOMAS SANTARLAS,

    Plaintiff,

v.                                                         Case No. 5:16-cv-380-Oc-32PRL

CITY OF COLEMAN, FLA.
and MILTON HILL,

    Defendants.

## **O R D E R**

This First Amendment retaliation action, is before the Court on the City of Coleman, Fla. and Mayor Milton Hill's motion for summary judgment. (Doc. 49). Plaintiff Thomas Santarlas's original complaint—which then included co-Plaintiff Robert Bernhard—proceeded under 42 U.S.C. § 1983 (Doc. 1), but was dismissed as a shotgun pleading (Docs. 23, 25). Santarlas and Bernhard filed an amended complaint (Doc. 27). The Court partially granted Defendants' motion to dismiss the amended complaint, including dismissing all of Bernhard's claims, but left intact Santarlas's First Amendment retaliation claims against the City and Hill in his individual capacity. (Docs. 34, 43). Following answers from both the City and Hill (Docs. 45, 46), Defendants filed

this motion, to which Santarlas responded (Doc. 53). Defendants then filed a reply to Santarlas's response (Doc. 58), and Santarlas filed a sur-reply (Doc. 61).

I. **BACKGROUND**

Until Hill disbanded the City's police force in February 2014, Santarlas worked as a reserve police officer—including, at one point, acting chief of police—for the City. (Doc. 27 ¶¶ 7, 9; Doc. 53 at 8). His primary duties, and the principal reason he joined the City's police force, centered on writing and managing financial grants for the police department. (Id. ¶ 7). The bulk of Santarlas's amended complaint details his many attempts to procure equipment for the police department, as well as Defendants' recurrent efforts to thwart him. (Id. ¶¶ 8–16). Santarlas alleges that Defendants repeatedly denied him access to information that would have permitted him to inexpensively acquire much-needed supplies for the police department. (Id.). He further recounts Defendants' misallocation of public funds and his attempts to inform the appropriate authorities. (Id.). After a series of apparently unpleasant encounters with Santarlas, Hill dismissed him and disbanded the City's police department; Hill then contracted with the Sumter County Sheriff's Office to fulfill the City's law enforcement needs. (Id. ¶¶ 8–9; Doc. 53 at 19). Santarlas's response to Defendants' motion for summary judgment features an extended retelling of these same events. (Doc. 53 at 2–24). Yet at bottom, Santarlas alleges that following an extended disagreement between himself and

Defendants about grants, he uncovered possible evidence that they misappropriated public funds; he then complained to the State Attorney's Office about what he discovered and was fired in retaliation for exercising his First Amendment rights.[1] (Id.).

Defendants argue three points in their motion for summary judgment. First, Santarlas is not entitled to First Amendment protection because he did not speak as a private citizen about an issue of public concern. (Doc. 49 at 13). Second, as it applies to the City, Santarlas cannot demonstrate a policy or custom of retaliation. (Id. at 18). Third, pertaining to Hill, the mayor is entitled to qualified immunity. (Id. at 20). In response, Santarlas appears to argue that allegations of government mismanagement are, on their face, matters of public concern.[2] (Doc. 53 at 25). He further asserts (again, without citation to legal authority) that because he used his own computer, worked after regular

---

[1] Belying Santarlas's narrative, however, is the fact that he contacted the State Attorney's Office on February 13, 2014, three days after Hill disbanded the police department. (Doc. 27 ¶ 8; Doc. 49 at 8; Doc. 50-1 at 80–81; Doc. 50-4 at 2). Santarlas did not adduce that the Defendants knew in advance that he was contacting the State Attorney or was about to engage in any other type of protected speech or conduct.

[2] However, Santarlas cites no cases to support this assertion; instead, he cites paragraphs 1-60 of the statement of facts in his response. However, the statement of facts is only 53 paragraphs long. Santarlas's argument section is a mere two pages long, and contains almost no citations to case law (instead, Santarlas cites his own statement of facts), making it difficult for the Court to utilize it.

3

business hours, and appeared at City council meetings in civilian clothing, he functioned as a private citizen and not a government employee. (Id. at 26). Lastly, Santarlas argues that Hill is not entitled to qualified immunity because he engaged in viewpoint-based discrimination. (Doc. 61 at 6).

II. **LEGAL STANDARD AND FIRST AMENDMENT PRINCIPLES**

The First Amendment permits government entities to regulate their employees' expression much more stringently than they may regulate private citizens' speech. Connick v. Myers, 461 U.S. 138, 140 (1983); Pickering v. Bd. of Educ. of Twp. High Sch. Dist., 391 U.S. 563, 568 (1968). In the context of retaliation suits, government employers are afforded broad discretion in their employment decisions. Johnson v. Clifton, 74 F.3d 1087, 1092 (11th Cir. 1996).

Nevertheless, a government employer may not dismiss or demote a public employee in retaliation for constitutionally protected expression. Bryson v. City of Waycross, 888 F.2d 1562, 1565 (11th Cir. 1989). Although public employees "must accept certain limitations on [their] freedom[s]," Garcetti v. Ceballos, 547 U.S. 410, 418 (2006), they do not "relinquish the First Amendment rights [they] would otherwise enjoy as citizens to comment on matters of public interest." Pickering, 391 U.S. at 568. The goal, therefore, is to find "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id.

In finding that balance, the Supreme Court applies a two-step analysis to ascertain whether speech from a public employee is protected by the First Amendment:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on . . . her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public [based on the government's interests as an employer].[3]

Garcetti, 547 U.S. at 418 (citations omitted). Both of these steps are matters of law, resolvable by this Court. See, e.g., Moss v. City of Pembroke Pines, 782 F.3d 613, 618 (11th Cir. 2015); Battle v. Bd. of Regents, 468 F.3d 755, 760 (11th Cir. 2006).

The threshold question is comprised of two components. For a government employee's speech to be constitutionally protected, the employee must speak (1) as a private citizen and (2) on a matter of public concern. Boyce,

---

[3] If the employee passes the threshold inquiry—whether he (1) spoke as a private citizen (2) on a matter of public concern—then "the possibility of a First Amendment claim arises," and interest-balancing is required. Garcetti, 547 U.S. at 418. Yet if the two-pronged threshold question is not affirmatively answered, then the Pickering (balancing) test is not triggered. Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007) Because Santarlas does not meet the threshold requirement, a full First Amendment balancing analysis is not warranted.

5

510 F.3d at 1342. Put another way, the Eleventh Circuit in <u>Alves v. Board of Regents of the University System of Georgia</u>, 804 F.3d 1149, 1160 (11th Cir. 2015), declared that courts must consider both the "role the speaker occupied" and "the content of the speech" to ascertain whether the putative government retaliation at issue necessitates the <u>Pickering</u> test, which balances rights of the speaker against the practical considerations of government operations. <u>Pickering</u>, 391 U.S. at 568.

III. **ANALYSIS**

    A. **Private Citizen Speech Versus Public Employee Speech**

The threshold inquiry considers "whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee." <u>Kurtz v. Vickrey</u>, 855 F.2d 723, 727 (11th Cir. 1988). In 2006, the Supreme Court in <u>Garcetti v. Ceballos</u> held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Garcetti</u>, 547 U.S. at 421. Furthermore, "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." <u>Id.</u> at 424. <u>Garcetti</u> tasks district courts with asking "whether the speech at issue owes its existence to the employee's professional responsibilities." <u>Id.</u> at 421.

In <u>Garcetti</u>, a deputy district attorney wrote a memo complaining about the methods his supervisors used in obtaining a warrant, suggesting that they engaged in illegal conduct. <u>Id.</u> at 414. After several phone conversations, more memos, and a "heated" meeting among those involved, the attorney faced an apparent series of retaliatory responses from his supervisors. <u>Id.</u> The Supreme Court found that because writing memos was part of the attorney's expected duties, the memo in question was made pursuant to his employment and was not protected by the First Amendment. <u>Id.</u> at 426.

The Supreme Court revisited this issue eight years later in <u>Lane v. Franks</u>, 134 S. Ct. 2369 (2014), and clarified <u>Garcetti</u>'s contours.[4] <u>Lane</u> tackled the issue of "whether the First Amendment protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities." <u>Id.</u> at 2378. In holding that the First

---

[4] Prior to <u>Lane</u>, the Eleventh Circuit applied <u>Garcetti</u> in <u>Vila v. Padron</u>, 484 F.3d 1334, 1336–38 (11th Cir. 2007). In <u>Vila</u>, a college administrator argued that she lost her job due to First Amendment-protected expression that criticized a series of alleged illegal and unethical behavior by other college officials. Finding that the administrator's "statements fall squarely within her official job duties and are not protected by the First Amendment," the Eleventh Circuit relied on <u>Garcetti</u>. <u>Id.</u> at 1340; <u>see also</u> <u>Battle</u>, 468 F.3d at 757–58 (determining that a university employee's allegations of "fraudulent mishandling and mismanagement of Federal financial aid funds" by her superiors were not actionable under the First Amendment because the allegations fell within the scope of her job). <u>Lane</u>, which focuses <u>Garcetti</u>'s application on expected job duties rather than knowledge acquired on the job, does not change the veracity of these holdings.

7

Amendment protects such speech, the Supreme Court determined that testifying under oath was not a part of a college program director's expected duties. "The critical question under Garcetti," the Court expounded, "is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." Id. at 2373. Interpreting Garcetti and Lane, the Eleventh Circuit "explained that [a]fter Lane, Garcetti's phrase 'owes its existence to' . . . must be read narrowly to encompass speech that an employee made in accordance with or in furtherance of the ordinary responsibilities of her employment, not merely speech that concerns the ordinary responsibilities of her employment." Carollo v. Boria, 833 F.3d 1322, 1330 (11th Cir. 2016) (some internal quotation marks omitted) (quoting Alves, 804 F.3d at 1162).

Since Lane, the Eleventh Circuit generally looks to several factors to help determine whether speech falls within the scope of a public employee's duties. "Practical factors that may be relevant to, but are not dispositive of, the inquiry include the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job." Alves, 804 F.3d at 1161; see Carollo, 833 F.3d at 1330 (holding that only discovery could provide sufficient evidence into whether reporting misconduct to police was an expected duty of a city manager); Slay v. Hess, 621 F. App'x 573, 575–76 (11th Cir. 2015) (finding that "accusations that [the

8

plaintiff's] supervisors were falsely allotting that time [sheet] . . . did not remove her time sheet responsibilities from the normal course of her job duties. . . . Her circumstances are far removed from the facts of Lane"); Moss v. City of Pembroke Pines, 782 F.3d 613, 620 n.1 (11th Cir. 2015) (determining that when a plaintiff complained about government malfeasance to city officials, bosses, and community members, he "spoke in furtherance of his many self-described duties as the Assistant Fire Chief" and had no First Amendment protection).

Looking at the three Alves factors in light of this case—"employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job," Alves, 804 F.3d at 1161—two factors are directly relevant.[5] Santarlas was hired by the City to work for the police department as a reserve officer and to solicit and manage grants. (Doc. 27 ¶ 7). The speech described in Santarlas's complaint, response brief, and affidavit falls within his twin roles of grant manager and police officer, thus aligning the speech with the core purposes of his job.[6] See, e.g., Doc

---

[5] The third factor, whether the speech occurred in the workplace, is of less help in this case because much of Santarlas's speech took place remotely via telephone calls and emails. Furthermore, police-related work is inherently mobile and often does not occur in a traditional office setting. See Doc. 50-1 at 70 (Santarlas estimates he spent about forty percent of his time on patrol and sixty percent writing grants from an unspecified location).

[6] To the extent Santarlas's speech concerned a lack of police uniforms and equipment, the Court will not consider it in great depth, as these arguments were addressed and rejected in the Magistrate Judge's Report and Recommendation (Doc. 34 at 6 n.4), which the undersigned adopted (Doc. 43).

52-18 ¶¶ 22–29 (describing communication between Santarlas and various public officials about the poor conditions of the police department). To cite one example, Santarlas recounted that "[o]n February 11, 2014 at 8:16 am [sic] Dr. Santarlas, in his official capacity as the Deputy Chief of Police, sent Mayor Hill an e-mail advising him of unsafe working conditions at the PD as well as a lack of proper police equipment, uniforms and jackets for the officers." (Doc. 53 at 7).

Santarlas documents in an affidavit, however, that he often used his own email address and personal time to get in touch with the mayor and city council members "in reference to his various complaints." (Id. at 11; Doc 52-18 ¶¶ 53, 54). Nevertheless, the listed activities—emailing, visiting, and going out to lunch with public officials—are the same types of undertakings described in Vila, Battle, and Garcetti, all of which were found to be within the scope of

---

See Doc. 34 at 6 n. 4 ("While Santarlas's reports to the State Attorney and Sheriff are easily discernible as potential citizen speech (that would appear to be protected), the remainder of his speech described in the Amended Complaint is not. For example, the remainder of his alleged speech appears to be pursuant to his ordinary job duties, such as requesting equipment, corresponding regarding insurance issues, communicating regarding funds for equipment, and requesting financial information necessary for grants.").

Police administrators—and especially chiefs of police, as Santarlas was for a portion of the relevant time period—possess broad latitude within their expected duties. See, e.g., Cooper v. Dillon, 403 F.3d 1208, 1222 (11th Cir. 2005) (referring to general "indicia in state law that police chiefs in Florida have final policymaking authority in their respective municipalities for law enforcement matters."). Communicating or coordinating with other law enforcement entities, such as the State Attorney's Office, fall squarely within a chief of police's expected purview.

employment. Vila, 484 F.3d at 1336–38; Battle, 468 F.3d at 758–59; Garcetti, 547 U.S. at 413–15. Even Santarlas's investigation into possible misallocation of grant money was instituted in his capacity as an employee of the City. He admits as much in his deposition, where he states that after the reserve officer program was disbanded, he could no longer continue the investigation because he lacked the "legal authority" as a City police officer to do so. (Doc. 50-1 at 66:12-16). In short, Santarlas's expression is "speech that owes its existence to the employee's professional responsibilities." Garcetti, 547 U.S. at 421. Because Santarlas's speech related directly to his job and fell within the scope of his expected duties, the Court finds that he spoke as an employee of the City, not as a private citizen.

B. **Speech of Public Concern**

The second prong of the threshold question—whether the speech addresses an issue of public concern or merely an issue of private interest—is contextual.[7] See, e.g., Alves, 804 F.3d at 1161; Boyce, 510 F.3d at 1342–43. Broadly speaking, issues of public concern relate to "any matter of political, social, or other concern to the community." Connick, 461 U.S. at 146. The question turns on "the content, form, and context of a given statement, as

---

[7] Although it is not necessary to analyze both prongs of the threshold step if one of them is not satisfied, courts commonly elect to do so. See, e.g., Alves, 804 F.3d at 1165 (transitioning between the private citizen and public concern considerations by stating that "[o]ur inquiry could—but does not—end here.").

11

revealed by the whole record." Id. at 147–48.

As a practical matter, whether an employee's expression raises issues of public concern or promotes purely a private interest is rarely an either-or proposition. See Akins v. Fulton Cty., 420 F.3d 1293, 1304 (11th Cir. 2005) ("[A]n employee's speech will rarely be entirely private or entirely public.") (internal citation omitted). In reviewing the complete record, then, "[w]e ask whether the main thrust of the speech in question is essentially public in nature or private." Vila, 484 F.3d at 1340; see also Morgan v. Ford, 6 F.3d 750, 755 (11th Cir. 1993) (discussing the first two prongs of the threshold question by stating that "[r]ather than categoriz[ing] each phrase the employee uttered, we consider whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee.").

Interpreting Connick's "content, form and context" test, the Eleventh Circuit has determined that communication generated in the "normal course of [a plaintiff's] duties" is usually not a matter of public concern. Morris v. Crow, 142 F. 3d 1379, 1382 (11th Cir. 1998). A "public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." Ferrara v. Mills, 781 F.2d 1508, 1516 (11th Cir. 1986). "[T]he relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is whether the purpose of the plaintiff's speech was to raise issues of public

12

concern." Maggio v. Sipple, 211 F.3d 1346, 1353 (11th Cir. 2000) (internal citation omitted).[8]

Looking at the content, form, and context of the speech reveals that Santarlas spoke about two main issues: procurement of police equipment and putative corruption within the City's administration; he predominantly expressed himself through in-person conversations, emails, appearances at city council meetings, and complaints to the State Attorney's office—each of which were consistent with his roles as grant manager and police officer. (Doc. 53 at 2–23).

Although allegations of government corruption may certainly be interesting to the public at large, the Supreme Court in Connick opined that public interest is, by itself, insufficient to satisfy the threshold question's second prong. Because virtually every action a government official takes is inherently newsworthy, Connick warns courts to interpret the meaning of "public concern" narrowly, lest every criticism spawn a constitutional claim. See Connick, 461

---

[8] A court may furthermore examine an employee's apparent motivation in speaking. Vila, 484 F.3d at 1339. Even so, "a court cannot determine that an utterance is not a matter of public concern solely because the employee does not air the concerns to the public." Morgan, 6 F.3d at 754 n.5. Kurtz, 855 F.2d at 727. "Thus, whether the speech at issue was communicated to the public or privately to an individual is relevant—but not dispositive." Alves, 804 F.3d at 1162. In this case, Santarlas's communication was predominantly internal—it was mostly directed to city council members, Hill, and other public employees.

13

U.S. at 149 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case."). See also Morris, 142 F.3d at 1381 ("The fact that such information may be of general interest to the public . . . does not alone make it of public concern for First Amendment purposes.").

It is apparent that the "main thrust" of Santarlas's speech emerged from "personal grievances" that occurred during the normal course of his duties—namely, frustration over the City's mismanagement of funds and stonewalling his access to grant money and supplies. Vila, 484 F.3d at 1340; Ferrara, 781 F.2d at 1516. For instance, in his deposition testimony, Santarlas describes the actions he took to improve accountability regarding the City's finances in relation to "[his] officer[s]" being in jeopardy of being held responsible for missing money—language that shows he acted pursuant to his normal duties as an officer and out of concern for his employees. (Doc. 50-1 at 112:11-17). Further, his criminal investigation stemmed from his belief that "grant money and private donations were unaccounted for." (Id. at 104:1-5). His interest in such funds directly related to his role in managing the procurement of grants, which involved responding to inquiries regarding budgets, financials, and follow-up on grant applications. (Id. at 71:7-19). As such, his speech regarding missing grant funds pertained to his official grant writing responsibilities. See

Battle, 468 F. 3d at 761-62 (speech made pursuant to "official employment responsibilities" failed to form basis for First Amendment retaliation claim).

Because Santarlas did not speak as a private citizen on a matter of public concern, there is no need to apply a Pickering-style balancing test or consider whether Hill was entitled to qualified immunity. See Boyce, 510 F.3d at 1343 ("If the government employee, however, was speaking as an employee, then there can be no First Amendment issue, and the constitutional inquiry ends with no consideration of the Pickering test.").

IV. **CONCLUSION**

The Defendants produced a cogent motion that proffered three well-supported arguments illustrating the lack of genuine issues of material fact. (Doc. 49 at 13–24). The first of these arguments, that Santarlas spoke as a public employee on a matter within his expected duties, is sufficiently persuasive to render superfluous any inquiry into the second and third contentions. Under Rule 56, Federal Rules of Civil Procedure, once Defendants have demonstrated an absence of genuine issues of material fact, the burden shifts to Santarlas to show material factual disputes. Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993). This Santarlas has failed to do.[9]

---

[9] Santarlas's response fails to coherently address the Defendants' arguments. (Doc. 53). In a puzzling, two-part response, Santarlas's "Statement of Facts"

In making this determination, the Court acknowledges the Eleventh Circuit's repeated cautions to construe government-employee speech rights more narrowly than those of private citizens, thereby both improving the efficiency of government operations and conserving judicial resources. See Abdur-Rahman v. Walker, 567 F.3d 1278, 1282 (11th Cir. 2009) ("Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services."). See also id. (determining that when First Amendment complaints are limited to situations in which the plaintiff "spoke as a citizen on a matter of public concern, courts avoid judicial oversight of workplace communications and permanent judicial intervention in the conduct of governmental operations to a degree inconsistent with sound principles of federalism and the separation of powers.") (citing Battle, 468 F.3d at 760 and Garcetti, 547 U.S. at 421).

In situations such as this, in which a public employee suspects retaliation

---

comprises twenty-three pages of extraneous and seemingly stream-of-consciousness assertions (id. at 2–24), and his two-page "Memorandum of Law" fails to acknowledge the bulk of Defendants' contentions—and features exactly one citation to relevant case law. (Id. at 25–26). Santarlas's sur-reply is similarly deficient. (Doc. 61). Instead of rebutting the Defendants' argument that Santarlas was a public employee who spoke about job-specific matters, Santarlas instead devotes the majority of his space to discussing largely irrelevant evidentiary issues. (Id. at 1–6).

for exposing governmental malfeasance related to his job, the employee is often better served pursuing non-constitutional remedies instead of First Amendment claims:

> Exposing governmental inefficiency and misconduct is a matter of considerable significance. As the Court noted in Connick, public employers should, as a matter of good judgment, be receptive to constructive criticism offered by their employees. The dictates of sound judgment are reinforced by the powerful network of legislative enactments—such as whistle-blower protection laws[10] and labor codes—available to those who seek to expose wrongdoing. We reject, however, the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties. Our precedents do not support the existence of a constitutional cause of action behind every statement a public employee makes in the course of doing his or her job.

Garcetti, 547 U.S. at 425 (internal citation omitted).

With these admonitions in mind, and drawing all reasonable inferences in favor of Santarlas, the Court finds that Defendants have shown that no genuine dispute of material fact exists and that Defendants are entitled to judgment as a matter of law.

Accordingly, it is hereby

**ORDERED:**

1. Defendants City of Coleman, Fla. and Milton Hill's Motion for Summary Judgment (Doc. 49) is **GRANTED.**

---

[10] Notably, Santarlas refers to his speech as "whistleblowing speech" in his response. (Doc. 53 at 26).

2. The Clerk shall enter judgment in favor of Defendants City of Coleman, Fla. and Milton Hill and against Plaintiff Thomas Santarlas.

3. Once judgment has been entered, the Clerk shall close the file.

**DONE AND ORDERED** in Jacksonville, Florida the 20th day of July, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

mm
Copies:

Counsel of record